Robinson, J.
It is claimed by the plaintiff in error that the trial court erred in not sustaining its motion to direct a verdict in its favor at the close of plaintiff’s testimony, on the theory that the evidence of plaintiff did not disclose the violation of any duty owing by the defendant to the plaintiff, and indeed the facts in this case make, a close question, for a different rule from that which applies to railroads operating upon their own right of way and receiving and discharging passengers from their own platform applies to street railways operating upon the public street and having no control over the street other than the right to operate their cars over the same, in which situation the relationship of carrier and passenger must of necessity terminate upon the alighting of the passenger in safety upon the public street and complete clearance from the car; and, if there be liability in this case, it must-be because of the violation of some obligation prior to the severance of the relationship of carrier and passenger, directly causing the injury. Prior to that time the obligation rested upon the carrier to exercise the highest degree of care for the safety of the passenger, and the passenger, while not obliged to use the same degree of care, to-wit, the highest degree, yet was obliged to use ordinary care for *490 her own safety, and in the exercise of such care it was her duty to use her faculties, as well as it was the duty of the servant of the carrier to use his faculties, to ascertain whether she might alight at the time and place without being injured by passing vehicles, and she, alike with the carrier, was charged with the knowledge that upon the starting of the car after the first stop drivers of passing vehicles would be entitled to assume that the car would continue on its course and would not again discharge passengers until it reached the next regular stop and in consequence would start up their vehicles and the danger of injury from such passing vehicles thereby be increased.
It is true that under the evidence the jury might well have found that the situation requiring a second stop was created by the carrier, but the passenger, being charged with the knowledge of the existence of the ordinance, was therefore charged with knowledge of the increased danger occasioned by the second stop.
The charging of the passenger with knowledge of the existence of the ordinance, and the effect of the discharging of passengers at the first stop, and closing the door and again starting the car, in no way relieved the carrier of its obligation to exercise the highest degree of care toward her, having in mind the peculiar situation of danger by it created, and the knowledge by the passenger of the existence of the ordinance and the effect of the discharging of passengers at the first stop and again starting the car is important in this case only as touching upon the question of contributory negligence upon her part.
It is claimed, however, that the defendant in error was prevented from exercising her faculties of sight *491 and hearing, and from deliberately electing whether she would alight upon such second stop and assume the risk, or ride to the next regular stop, by the conduct of the conductor in upbraiding her for her tardiness in not alighting at the first stop and in upbraiding her for the inconvenience caused plaintiff in error by the second stop, and there is some testimony in the record tending to support this theory.
Plaintiff testified, “Then when I touched his shoulder, he turned and in a very ugly manner wanted to know why I didn’t waken up, what took me so long.” And, again, “Well, I turned to look at him and stepped down, because it was dark and I looked at the step. Then when I reached one foot on the ground, I turned, and I heard this terrible noise which a motorcycle makes, and that was all. Before I could take a step forward or backward, I was simply taken off the step.”
The negligence of the plaintiff in error in starting the car after the first stop, before all the passengers desiring to alight at that point had alighted, and the negligence in making the second stop, were matched by the negligence of the defendant in error in failing to look before she alighted, unless her contributory negligence may be excused by the conduct of the servant of the plaintiff in error towards her at the time.
The question of contributory negligence is a question of fact. The questions whether the conduct of the conductor, servant of the plaintiff in error, in lecturing the passenger at the time when she was alighting from the car, in a place of danger created by the plaintiff in error, prevented her from exercising ordinary care, and whether her conduct, -n *492 view of the situation created by the conduct of the plaintiff in error, amounted to ordinary care on her part, were questions of fact for the determination of the jury, and if submitted under proper instruction a reviewing court would not be justified in view of the evidence above quoted in holding that there was no evidence tending to refute the inference of contributory negligence on her part, which her own testimony and other testimony and the circumstances under which the injury was received would seem to make. In the charge before argument, upon request of plaintiff in error, the court charged very fully upon the subject of contributory negligence, and no complaint is made of the general charge upon that score.
The plaintiff in error, however, complains of this charge:
“It being an admitted fact that this lady was a passenger on that car that evening, and that they had accepted her as a passenger, there were certain legal obligations that they owed to her. They owed to her .the highest' practicable degree of care, to not only carry her safely, but to let her alight from the car at her destination in safety. They claim that the conductor was negligent and violated this legal obligation by failing to keep a lookout or look out to see that vehicles were not passing by at the time that she was permitted to leave the car.”
This paragraph of the charge was a correct statement of the law when applied to the admitted facts in this case, to-wit, that at this particular point in the street the width between the car and the curb was such as to require all vehicles to stop while the oar was discharging and receiving passengers, and *493 that the ear had stopped at the regular stopping place and had discharged passengers and had started on and had again stopped, thus creating a dangerous situation by notifying by its acts the drivers of vehicles stopped in the rear, or about to pass from the rear, that it was proceeding upon its way to the next regular stop.
It is the duty of the carrier not only to carry the passenger safely, but to allow her to alight from the car in safety, and where the carrier has itself created a dangerous situation the obligation devolves upon it before discharging a passenger into such situation to either remove the additional danger or warn the passenger of its existence.
The plaintiff in error complains of the next paragraph but one of the charge. So as to preserve continuity we quote both the paragraph complained of and the one preceding it:
“They claim, in addition to that, that they were negligent, the conductor was, in failing to warn her of the danger of alighting at that point. Those are the grounds of negligence upon which the plaintiff seeks to recover.
“As I have said to you, before you can make a finding of negligence against the defendant, you must be able to say that the probabilities of the truth are with the plaintiff upon that subject. What say you, gentlemen? Was it the duty of the conductor, under this rule of care that I have given you, to look out to. see whether there was any danger to her in alighting? Was it his duty, under this rule of care, to warn her of that danger, if there was danger? And was the failure to look or to warn, was that a direct and proximate cause of her *494 injury? Because you must remember all the time, that not only the claim must be proven in the way I have designated, but she must also prove, by a preponderating weight of the evidence, that that negligence was the direct, or one of the direct and proximate causes of her injuries. ’ ’
We do not approve of the language of this paragraph of the charge. It was, as we view it, imposing upon the jury the duty of determining the law as to the obligation of the plaintiff in error to its passenger. But we are unable to find any prejudice to the plaintiff in error, for the reason that had the court charged the law under the particular circumstances of this case he would have been obliged to have said to the jury that the plaintiff in error having created a dangerous situation the duty devolved upon it either not to discharge the passenger until the dangerous situation by it created had passed or to warn her of that dangerous situation. The court here put to the jury a question as to the duty of plaintiff in error which he himself should have answered in the affirmative.
Complaint is also made of the following charge:
“In determining that question, gentlemen, you will take into consideration the circumstances that have been proven, the place where they permitted her to alight, the manner and the way in which they permitted her to alight, and the surroundings at the time; the plaintiff insisting on her behalf, that the car had stopped, and there is no dispute about that, to allow passengers to alight from the car, and that she did not have the opportunity of alighting, and that the car proceeded on its way some little distance. There is no dispute as to the distance the car traveled before it stopped the second time.
*495 “It is also claimed on behalf of the plaintiff that the conductor knew, or in the exercise of this highest degree of care that I have called your attention to, ought to have known that vehicles would be passing the car immediately after it started, and therefore he was negligent in not protecting her from that dangerous condition.
“It was the duty of the defendant company, not only to carry her in safety, as far as the highest practicable degree of care was concerned, but it was also their duty to set her down or to allow her to alight at a place of safety.
“Did the conductor know that that place was unsafe? If he did not know, have personal knowledge of it, should he have known, in the exercise of that care to which I have called your attention?
“If he did not know, or should not have known, under the exercise of the highest degree of care, then of course, he would not have been negligent, but if, on the other hand, he did know, or, by the exercise of the highest practicable degree of care, would have known that vehicles would be liable to be passing at that time, and place her in danger, then it was his duty, under the law, to either warn or protect her and set her down safely. ■
“Now, gentlemen, that is a question that goes to you, and you alone are the judges of it under the facts.
“If you should find, gentlemen, that the company were not guilty of negligence, either in failing to keep a lookout and protect her as she alighted from the car, or if you should fail to find that, and fail to find that it was the duty of the conductor to warn her of the danger, then your verdict would be for the defendant.”
*496 This portion of the charge is alike subject to the objection that the court submitted to the jury for their determination questions which should have been declared by the court as a matter of law, to-wit, that the plaintiff in error was charged with knowledge of the provisions of the ordinance, and with knowledge that by its conduct in discharging passengers at the regular stop, and closing its doors, and again starting on its course, persons having stopped their vehicles in the rear or overtaking the car from the rear would be led to believe that the car would proceed without further discharge of passengers to the next regular stopping place. And before again discharging passengers at that stopping place it was the duty of the plaintiff in error either to remove the danger thus by it created, by keeping its doors closed until such vehicles had passed, or to warn the passenger of the existence of the dangerous situation it had created. But the submission of this question to the jury in no way prejudiced the plaintiff in error.
The court, however, charged the jury as follows:
“If you should find under this evidence, gentlemen of the jury, that the plaintiff alighted in safety upon the street, and the danger was not there at that time, and after so alighting on the street in safety, she was struck by this motorcycle, then she cannot recover, unless you find that this conductor should have kept a lookout and to warn her.”
We are not entirely clear as to what the court intended this particular language to mean, but it is at least fairly subject to the interpretation that if it was the duty of the plaintiff in error to keep a lookout, and to warn her, as we have held that it *497 was under the circumstances, then the liability of the plaintiff in error extended beyond the period when it had discharged its passenger in a place of safety, for the court said: “If you should find * * * that the plaintiff alighted in safety * * * and the danger was not there at that time, and after so alighting on the street in safety, she was struck by this motorcycle.” This assumes that defendant iu error, the plaintiff below, was discharged in a place of safety, free from danger, and thereafter received an injury from a source in no way connected with plaintiff in error, and from a source of danger which did not exist at the time of the severance of the relation of passenger and carrier. This extended the obligation of the carrier to the passenger after the relationship had been severed, and cannot be justified upon authority or reason, and in view of the fact that there was a conflict in the evidence as to the exact position of the defendant in error, plaintiff below, at the time of the injury, whether she was in the act of leaving the car or had proceeded a few steps from the car, and we are unable to determine which way the jury resolved that fact, we are compelled to find the error prejudicial; for if the jury determined the fact to be that the defendant in error, plaintiff below, alighted from the car in a place of safety and no danger was there at the time, no obligation rested upon the plaintiff in error to warn her of a danger which did not exist, and plaintiff in error could not be held liable for dangers which arose subsequent to the severance of the relationship of carrier and passenger. If the jury found that defendant in error, plaintiff below, after having alighted in a place of safety, in the absence of dan *498 ger, and after having progressed a few steps was struck by a passing motorcycle, which motorcycle was not menacing her at the time of her alighting from the car, under this instruction they might still have held the plaintiff answerable.
It is true that in the printed record filed this charge was paragraphed with the following, which immediately preceded it:
“If you should find either one of those items that I have called your attention to, in her favor, then there is another question which presents itself, and find also, remembering all the time that was the direct and proximate cause of her injury.”
And this paragraph was preceded in the printed record by this language separately paragraphed:
“If you should find, gentlemen, that the company were not guilty of negligence, either, in failing to keep a lookout and protect her as she alighted from the car, or if you should fail to find that, and fail to find that it was the duty of the conductor to warn her of the danger, then your verdict would be for the defendant.”
It is apparent that the paragraphing, as indicated, in the printed record, is incorrect, and such paragraphing could not appear in an oral delivery of the charge, for the words “if you should find either one of those items that I have called your attention to, in her favor,” necessarily referred to the two propositions of the preceding paragraph. So that as the charge must have been delivered to the jury the words “remembering all the time that was the direct and proximate cause of her injury” could not have cured the particular error manifesting itself in the charge referred to, unless this court *499 should go to the extent of holding that where the court has instructed the jury that the injury must-be the direct and proximate result of the negligence complained of such instruction is effective to nullify a specific instruction thereafter given which warrants a recovery for an injury which is not the direct and proximate result of the negligence complained of.
The court also charged the jury as follows:
“Give to her, if you come to the question, if you find that she is entitled to recover, that compensation which, in your judgment, she is entitled to recover.
“I cannot give you any rule as that because the law has formulated none, but it leaves it to the good judgment and good sense of the jury that tries it. You must weigh that up and determine, if you find in her favor, you must weigh that up and determine the question.”
This language is objectionable, and standing alone would be reversible error, but almost Immediately preceding this ill-considered language the court had given the jury the correct rule by which if they found liability they should arrive at the compensation therefor.
Having given the jury a correct rule, we do not believe that the statement afterwards made, that there was no rule, misled the jury into the belief that they were authorized to award damages according to their whim and caprice, rather than according to the extent of the injury proven to have been sustained.
We criticize the language, but are of opinion that taken in connection with the whole charge it was not prejudicial.
*500 ' The case will be reversed upon the sole ground that the court charged the jury, in effect, that the plaintiff in error could be held liable even though it discharged the passenger in a place of safety “and the danger was not there at the time,” for an injury which she thereafter received from an independent source.
Judgment reversedL
Marshall, C. J., Jones and Matthias, JJ., concur.
Wanamaker, J., dissents.